ALLOY BRIQUETTING
CORPORATION,
Plaintiff,

v.

NIAGARA VEST, INC. and Union
Carbide Corporation,
Defendants.

No. 90–CV–805S.

United States District Court,
W.D. New York.

Sept. 30, 1992.

Richard G. Collins, Buffalo, N.Y., John J. DelMonte, Niagara Falls, N.Y., for plaintiff.

Thomas E. Reidy, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., Mark R. McNamara, Moot & Sprague, Buffalo, N.Y., for defendant.

### DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Plaintiff commenced this action on August 1, 1990, seeking to recover, under various federal and state law theories, the costs plaintiff allegedly has incurred or will incur to clean up the alleged chemical contamination of certain property located in Niagara Falls, New York (the "Site"). Jurisdiction is predicated on 28 U.S.C. § 1331, § 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9613(b), and this Court's supplemental jurisdiction. 28 U.S.C. § 1367.

Plaintiff's second amended complaint (the "amended complaint") alleges that the plaintiff had leased the Site from Niagara Vest, the current owner of the Site.[1] Plaintiff further alleges that Union Carbide owned the Site prior to Niagara Vest, and for over forty years had occupied the Site and operated a manufacturing facility on it. Additionally, plaintiff alleges that during the course of its operations, Union Carbide handled, used, stored and disposed of hazardous substances on the Site and adjacent property, and that following Niagara Vest's acquisition of the Site Niagara Vest caused or permitted the deposit and storage of hazardous substances on property contiguous to the Site. Due to resulting releases of hazardous substances, plaintiff allegedly incurred response costs consistent with the national contingency plan.

In its amended complaint, plaintiff asserts five claims for relief against both of the defendants, and one additional claim for relief against Niagara Vest alone. Plaintiff's first claim for relief is premised upon Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), which allows a private party to recover the "response costs" incurred in responding to a discharge or threatened discharge of hazardous materials (second amended complaint, pp. 6–9).[2]

The second claim for relief is based upon Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), which provides a right of contribution against other parties who may be liable for the release or threatened release of toxic materials (C, pp. 9–10).

The third claim for relief is for common law restitution against the defendants for the costs that have been and will be incurred by the plaintiff as a result of contamination by the defendants (C, p. 10).

The fourth claim for relief seeks a declaratory judgment setting forth the respective rights and obligations of the parties with regard to the contamination. Plaintiff asks that this Court apportion the liability for past and future response costs on the basis of liability (C, pp. 11–12).

The fifth claim for relief seeks common law indemnity against the defendants (C, pp. 12–13).

The sixth and final claim for relief is a fraud claim against Niagara Vest alone. Plaintiff alleges that while it was negotiat-

---

1. Actually, the second amended complaint alleges that the Plaintiff is still a lessee on the property; however the parties agree in their memoranda that the Plaintiff ceased having any legal or equitable interest in the Site before the second amended complaint was filed (Defendants' Memorandum of Law, p. 2).

2. Hereinafter, all references to Plaintiff's second amended complaint will be abbreviated "C"; Plaintiff's Memorandum of Law "P.M."; Defendants' Memorandum of Law "D.M."; and the Decision and Order of this Court filed February 14, 1991 regarding Defendants' motion to dismiss the original complaint "D & O".

ing the lease of the Site with Niagara Vest, high-level employees of Niagara Vest represented that the Site was free of hazardous materials. Moreover, the plaintiff indicates that a paragraph in the "agreement of sale" executed by the plaintiff and Niagara Vest contains an affirmative covenant that the Site was not contaminated. The plaintiff alleges that it relied upon these false statements when entering the agreement, and that Niagara Vest is liable for fraud (C, pp. 13–16).

It should be noted at the outset that plaintiff refers throughout the amended complaint to future response costs that may be incurred in dealing with contamination at or near the Site. Plaintiff now submits that all such references refer only to future attorney fees and disbursements (P.M. pp. 10–11). Whether or not these costs are recoverable in this litigation will be addressed below.

The defendants seek the following relief in their motion to dismiss: (1) dismissal of each claim for relief insofar as it seeks recovery of attorney fees; (2) dismissal of plaintiff's second claim for relief in its entirety; (3) dismissal of plaintiff's fourth claim for relief in its entirety; and (4) striking from the second amended complaint all references to and requests for recovery of future response costs. These requests will be addressed seriatim.

## ATTORNEY FEES

The defendants argue that plaintiff has no right to be reimbursed for attorney fees incurred in the prosecution of this lawsuit (D.M. pp. 3–11). On the other hand, plaintiff argues that CERCLA awards attorney fees to a private plaintiff who has responded to the release of a hazardous substance (P.M. pp. 4–8). This issue has not yet been considered by the Second Circuit, and there is a considerable split of authority among various district courts. Therefore, this issue will be addressed at some length by this Court.

■ It is well-established that, absent a contractual or statutory provision, the prevailing litigant cannot recover attorney fees from the losing party. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 262, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141 (1975). "[A]bsent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation." *Runyon v. McCrary*, 427 U.S. 160, 185, 96 S.Ct. 2586, 2601, 49 L.Ed.2d 415 (1976). Because plaintiff is relying on the provisions of CERCLA to recover attorney fees, this Court must examine the statutory language of CERCLA and, where necessary, the legislative history, to determine whether Congress has explicitly authorized attorney fees. To find such an authorization, this Court must find more than "generalized commands," *Runyon v. McCrary*, 427 U.S. at 186, 96 S.Ct. at 2602; rather, it must find a "clear expression of Congress' intent." *General Electric v. Litton Indus. Automation Systems*, 920 F.2d 1415, 1421 (8th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991).

■ In demanding attorney fees, plaintiff relies on the "plain and ordinary meaning" of 42 U.S.C. § 9607(a)(4)(B) (P.M., p. 4). This section enables a private party to recover from another person the "necessary costs of response" incurred in dealing with the release of hazardous substances. "Response" is defined by 42 U.S.C. § 9601(25) as "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." The question then becomes whether attorney fees are recoverable as "necessary costs" of "enforcement activities" related to the removal of hazardous substances. CERCLA does not define the term "enforcement actions," and, contrary to the argument of plaintiff, this Court does not believe that the term has a "plain and ordinary meaning." Therefore, the term must be examined in its statutory context and in light of its legislative history.

Congress added "enforcement activities" to the category of response costs in its

1986 amendments to CERCLA.[3] The Report of the House Committee on Energy and Commerce regarding H.R. 2817[4] explains that the addition of this language "will confirm EPA's authority to recover costs for enforcement actions taken against responsible parties." H.R.Rep. No. 253, 99th Cong., 1st Sess., pt. 1, at 66, reprinted in 1986 U.S. CODE CONG. & ADMIN. NEWS 2835, 2848–49. Significantly, no mention is made of "enforcement actions" undertaken by private parties, and the amendment appears to relate only to cost recovery actions undertaken by the government under 42 U.S.C. § 9607(a)(4)(A), which imposes liability for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe...." Such a reading of the statute is consistent with case law indicating that "private parties do not incur 'enforcement costs' as contemplated by CERCLA." *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 708, n. 13 (D.N.J.1988).

Furthermore, 42 U.S.C. § 9607(a)(4)(A) must be read in connection with 42 U.S.C. § 9604(b)(1), authorizing the President "to undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of this chapter." This section is a further indication that Congress intended that the government recover the litigation costs of enforcing CERCLA. No corresponding statute exists which extends this right to private plaintiffs.

In view of the statutory context and legislative history, this Court declines plaintiff's invitation to join the courts holding that private plaintiffs can initiate "enforcement actions" within the meaning of CERCLA, and thereby recover litigation costs. *General Electric v. Litton Indus. Automation Systems,* 920 F.2d 1415 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *Pease*

*and Curren Refining, Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945 (D.C.Cal.1990); *Gopher Oil Co. v. Union Oil Co.,* 757 F.Supp. 998 (D.Minn.1991); and *Jersey City Redevelopment Authority v. PPG Industries, Inc.,* 866 F.2d 1411 (3d Cir.1988).

■ Even if private party cost recovery suits could be characterized as "enforcement actions" under CERCLA, the statutory language would still fall far short of "explicit congressional authorization" for attorney fees. *Litton,* 920 F.2d at 1421. "Many courts have found that CERCLA lacks the specificity required under the *Alyeska* and *Runyon* holdings." *Fallowfield Development Corp. v. Strunk,* 766 F.Supp. 335 (E.D.Pa.1991), *citing Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62–63 (D.N.H.1990), *Regan v. Cherry Corp.,* 706 F.Supp. 145, 148–50 (D.R.I.1989), and *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–708 (D.N.J.1988). For example, in *Leonard Partnership v. Town of Chenango,* 779 F.Supp. 223 (N.D.N.Y.1991), the United States District Court for the Northern District of New York determined that CERCLA "provides no such explicit authorization" for attorney fees in private cost recovery litigation. *Id., citing In re Hemingway Transport, Inc.,* 126 B.R. 656, 663 (D.Mass.1991). CERCLA "specifically provides that the *government* can recover legal costs ... but fails to extend that right to private parties." *Id.* (citation omitted). In another case, the Southern District has reached the same result, explaining that:

> ... [i]f Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended [§ 9607] to allow the recovery of these litigation costs. SARA [the Superfund Amendments and Reauthorization Act of 1986] was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply [sic] matter to amend [§ 9607] to allow recovery of attorney fees.

---

**3.** Superfund Amendment and Reauthorization Act (SARA), Pub.L. No. 99–499, 100 Stat. 1613 (1986).

**4.** This resolution was one of two bills drafted to amend CERCLA.

*State of New York v. SCA Services, Inc.,* 754 F.Supp. 995, 1000 (S.D.N.Y.1991), citing, *Regan v. Cherry Corp.,* 706 F.Supp. 145, 149 (D.R.I.1989).

This Court finds no reason to differ from the holdings of the other courts within the Second Circuit. Furthermore, two Circuit Courts of Appeals have addressed the issue and have declined to award attorney fees to private litigants under CERCLA. *See State of Idaho v. Hanna Mining Co.,* 882 F.2d 392 (9th Cir.1989) and *Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453 (1st Cir.1992) (explaining that "litigation-related expenses are, of course, not compensable as response costs incurred by private parties under CERCLA [§ 9607]," citing, among other cases, *Leonard Partnership v. Town of Chenango,* 779 F.Supp. 223, 229–30 (N.D.N.Y.1991)). *Cf. General Electric Co. v. Litton Indus. Automation Systems, Inc.,* 920 F.2d 1415 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1990).

Finally, it is important to note that CERCLA explicitly provides attorney fees for certain parties. For instance, as part of the 1986 amendments to CERCLA, Congress specifically authorized attorney fee awards in citizen action suits brought against polluters or against the EPA for failure to enforce CERCLA. 42 U.S.C. § 9659. Congress also authorized attorney fee awards in actions taken by "whistle-blowing" employees of polluting companies. 42 U.S.C. § 9610(c). Congress' use of explicit language in these sections further indicates that had Congress intended for private plaintiffs to recover attorney fees in enforcement actions, it would have said so in equally explicit language. *Regan v. Cherry,* 706 F.Supp. 145 (D.R.I. 1989). Therefore, this Court concludes that CERCLA does not permit plaintiffs in private-party cost recovery suits to demand attorney fees.

■ Similarly, attorney fees are not available to the plaintiff under its state law claims for restitution (plaintiff's third claim for relief) and indemnity (plaintiff's fifth claim for relief). This Court must apply New York State law to resolve this issue, as part of its supplemental jurisdiction under 28 U.S.C. § 1367. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The New York courts have held that in the absence of a statute or a contractual provision, attorney fees are not recoverable in private-party litigation. *Mighty Midgets, Inc. v. Centennial Insurance Co.,* 47 N.Y.2d 12, 21–22, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1085, *citing Alyeska,* 421 U.S. at 247–59, 95 S.Ct. at 1616–22, 44 L.Ed.2d 141 (1975). It has already been noted that no statutory or contractual authorization for attorney fees exists in this case. Therefore, the ordinary rule applies, and no attorney fees are recoverable by the plaintiff.

■ This Court notes that *Shindler v. Lamb,* 25 Misc.2d 810, 211 N.Y.S.2d 762 (N.Y.Sup.Ct.1959), *aff'd,* 10 A.D.2d 826, 200 N.Y.S.2d 346 (1st Dep't 1960), *aff'd,* 9 N.Y.2d 621, 210 N.Y.S.2d 226, 172 N.E.2d 79 (1961) creates an exception to the ordinary rule (P.M., p. 9). Although *Shindler* does create an exception, the exception has no application to the present case. *Shindler* expresses the principle that where, "through the wrongful act of his present adversary, a person is involved in earlier litigation with a third person in bringing or defending an action to protect his interests, he is entitled to recover the reasonable value of attorneys' fees and other expenses thereby suffered or incurred." *Id.* 25 Misc.2d at 812, 211 N.Y.S.2d at 765. In the present case, however, there has been no previous litigation for which the plaintiff is seeking attorney fees; rather, he is seeking fees for this very litigation. There are no third parties involved, making it all the more clear that the *Shindler* exception does not encompass the present facts. *See Goldberg v. Mallinckrodt, Inc.,* 792 F.2d 305 (2d Cir.1986) (emphasizing that the exception does not apply where both parties were parties in the prior litigation). Therefore, this Court finds that the *Shindler* exception does not apply to the present case and accordingly, plaintiff's request for attorney fees under its restitution and indemnification claims is denied.

## PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF

In its second amended complaint, the plaintiff requests a declaratory judgment establishing the rights and liabilities of the parties with respect to contamination at the Site (C., pp. 11–12). The defendants have moved to dismiss this claim as repetitive. They argue that a declaratory judgment regarding past response costs is unnecessary because a judgment on plaintiff's claim for response costs under CERCLA (plaintiff's first claim for relief) would involve a determination of the parties' rights and liabilities. Further, the defendants note that this Court's previous Decision and Order of February 14, 1991 (the "Decision") dismissed plaintiff's declaratory judgment claim with regard to future response costs (D.M., p. 12). In that Decision, this Court found that plaintiff lacked standing to recover future costs because it had been evicted from the Site (D & O, pp. 11–15).

Plaintiff argues that this Court has already declined to dismiss the claim for a declaratory judgment with respect to costs already incurred, and that the defendants should not be heard again on the issue based upon new arguments.

The defendants are correct in pointing out that this Court already dismissed plaintiff's claim for a declaratory judgment insofar as plaintiff sought a judgment regarding future costs. Further, as mentioned earlier, plaintiff now submits that its request for future response costs consists of nothing more than a request for attorney fees and disbursements. Since this Court has already determined that neither CERCLA nor New York State law authorizes an award of attorney fees in this action, this Court finds no reason to modify its previous Decision with respect to future response costs.

■ With respect to response costs already incurred by the plaintiff, plaintiff argues that the defendants already challenged the declaratory judgment claim in their motion to dismiss the original complaint, and should be precluded from re-arguing the issue in the present motion. However, in its previous Decision this Court stated, "Defendants do not at this time challenge plaintiff's standing to assert a CERCLA claim for response costs allegedly incurred before plaintiff's leasehold in the Site was terminated" (D & O, p. 9, n. 6). This Court thus declined to determine whether plaintiff's claim for a declaratory judgment regarding past response costs should be dismissed. Now, this Court holds that the defendants' motion to dismiss plaintiff's fourth claim for relief insofar as it requests a declaratory judgment regarding past response costs is denied.

In *Arawana Mills Co. v. United Technologies, Corp.*, 795 F.Supp. 1238 (D.Conn. 1992), the court held that a plaintiff's claim for recovery of CERCLA response costs under § 9607 did not preclude another claim for a declaratory judgment under that section. This Court agrees. And although the *Arawana Mills* case involved a declaratory judgment for *future* response costs, this Court does not believe that a different result is warranted where *past* response costs are involved. Therefore, the defendants' motion to dismiss the fourth claim for relief is granted insofar as it pertains to a declaratory judgment regarding future response costs (i.e., attorney fees and disbursements), and the defendants' motion is denied insofar as it pertains to a declaratory judgment regarding past response costs.

## PLAINTIFF'S CLAIM FOR CONTRIBUTION

In its second claim for relief, plaintiff asserts a claim for contribution against both of the defendants pursuant to CERCLA, 42 U.S.C. § 9613(f), which provides, in part:

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.

Earlier in this litigation, the defendants moved to dismiss a similar contribution claim contained in plaintiff's original com-

plaint. The defendants had argued that the claim was not ripe for adjudication because plaintiff had not yet been held liable for response costs or entered into a settlement regarding response costs under CERCLA. In its previous Decision, this Court denied the defendants' motion to dismiss the contribution claim for lack of ripeness (D & O, pp. 7–9). This court relied upon *Rockwell International Corp. v. IU International Corp.*, 702 F.Supp. 1384, 1390 (N.D.Ill.1988), holding that a contribution claim was ripe because a pending declaratory relief claim "provides an avenue for determining how liability should be apportioned among ... responsible parties." Although no federal or state action had been initiated against the plaintiff in *Rockwell* at the time it brought its contribution claim, the court upheld the claim because the declaratory relief claim required the court to consider the parties' liability for future response costs. Although no money could be recovered by the plaintiff until it was subsequently found liable, the court would determine how the future costs would be apportioned.

██ This Court finds that the facts and circumstances of the present case have evolved in such a way that the holding in *Rockwell* has more limited application. First, *Rockwell* involved an apportionment of liability for future response costs. In the present case, this Court has already determined that the plaintiff has no standing to sue for future response costs because it has been evicted from the Site. Consequently, this Court dismissed plaintiff's declaratory judgment claim insofar as it pertained to future response costs.[5] Furthermore, plaintiff now submits that the only future costs it is pursuing are attorney fees for CERCLA litigation. As indicated above, however, this Court finds that attorney fees are not recoverable in private-party CERCLA litigation and thus, plaintiff has no cognizable contribution claim for future response costs at the present time.

With respect to past response costs, the rationale of *Rockwell* still applies. As previously indicated, this Court finds that the plaintiff may seek a declaratory judgment with respect to past costs. Therefore, the "avenue" described in *Rockwell* is still open. Given appropriate circumstances, plaintiff will not be barred from seeking contribution for past response costs.

Therefore, the defendants' motion to dismiss plaintiff's claim for contribution under CERCLA is granted insofar as the claim seeks contribution for future response costs, and the defendants' motion is denied insofar as the claim seeks contribution for response costs already incurred.

### FUTURE RESPONSE COSTS

Lastly, the defendants move to strike all reference in the second amended complaint to recovery for future response costs. They point to this Court's previous Decision and Order dismissing plaintiff's declaratory judgment claim pertaining to future costs, and dismissing plaintiff's restitution and indemnity claims to the extent that they sought recovery of future costs. Plaintiff states that its references to future response costs refer only to attorney fees and disbursements for litigation. Whereas this Court has determined that such costs are not recoverable in private-party cost recovery suits, the defendants' motion to strike all references to recovery for future costs pursuant to Fed.R.Civ.P. 12(f) is granted.

### CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss each claim for relief in plaintiff's second amended complaint insofar as it seeks recovery for attorney fees is granted.

The defendants' motion to dismiss plaintiff's claim for a declaratory judgment under CERCLA is granted insofar as the claim pertains to a declaratory judgment regarding future response costs, and is denied insofar as the claim pertains to a

---

5. Since the previous Decision and Order issued by this Court, the New York State Supreme Court, Appellate Division, Fourth Department, unanimously affirmed the eviction of the Plaintiff from the Site. The Plaintiff has no legal or equitable interest in the property at this time.

declaratory judgment regarding past response costs.

The defendants' motion to dismiss plaintiff's claim for contribution under CERCLA is granted insofar as the claim seeks contribution for future response costs, and the defendants' motion is denied insofar as the claim seeks contribution for response costs already incurred.

Finally, the defendants' motion to strike all references to recovery for future response costs is granted pursuant to Fed. R.Civ.P. 12(f).

### ORDER

IT HEREBY IS ORDERED, that defendants' motion to dismiss each claim for relief in plaintiff's second amended complaint insofar as it seeks recovery for attorney fees is Granted.

FURTHER, that defendants' motion to dismiss plaintiff's claim for declaratory judgment is Granted in part and Denied in part, as more fully set forth in the above decision.

FURTHER, that defendants' motion to dismiss plaintiff's claim for contribution under CERCLA is Granted in part and Denied in part, as more fully set forth in the above decision.

FURTHER, that defendants' motion to strike all references in plaintiff's second amended complaint to recovery for future response costs is Granted.

FINALLY, that the parties shall meet with the Court on Tuesday, October 13, 1992 at 9:00 a.m. in Part IV, Mahoney State Office Building, 65 Court Street, Buffalo, New York for a status conference.

SO ORDERED.